UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DENNIS CAMPOS, et al., | Case No: C 11-0431SBA |
| Plaintiffs, | **ORDER** |
| vs. | Dkt. 10. |
| BANK OF AMERICA, INC., a corporation, et al., | |
| Defendants. | |

Plaintiffs Dennis Campos and Anitra Campos ("Plaintiffs") brought the instant action in state court to challenge Defendants' foreclosure on their home, as well as to assert claims for wrongful foreclosures on behalf of class members in California similarly situated to Plaintiffs. Defendants removed the action based on the diversity jurisdiction statute, as amended by the Class Action Fairness Act. 28 U.S.C. § 1332. The parties are presently before the Court on Defendants' Motion to Dismiss. Dkt. 10. Having read and considered the papers filed in connection with this matter and being fully informed, for the reasons set forth below, the Court hereby GRANTS Defendants' motion with leave to amend, except with regard to Plaintiffs' claim under the California's Unfair Practices Act, which is dismissed without leave to amend. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

A. **FACTUAL BACKGROUND**

In 2006, Plaintiffs obtained a residential mortgage loan with Benchmark Lending Group ("Benchmark") to purchase property located at 234 Decanter Circle in Windsor, California. Dkt. 1 ¶ 16 at 27. As security, Plaintiffs signed a promissory note and deed of

1  trust.  Id. ¶17; Dkt. 11, Ex. 1.[1]  The deed of trust named Fidelity National Title as trustee

2  and Defendant Mortgage Electronic Registration Services, Inc. ("MERS") as beneficiary.

3  Dkt. 11, Ex. 1.  After Plaintiffs took possession of the property, Benchmark transferred the

4  loan to Defendant Countrywide Home Loans ("Countrywide").  Dkt. 1 ¶ 21 at 28.

5      In Summer 2008, Plaintiffs entered into a loan modification with Countrywide.  Id. ¶

6  22 at 28.  On July 1, 2008, Defendant Bank of America, Inc. ("Bank of America")

7  purchased Countrywide.  Id. ¶ 23.  On October 27, 2009, MERS recorded a substitution of

8  trustee, substituting Defendant Recon Trust Company ("Recon Trust") as the new trustee.

9  Dkt. 11, Ex. 2.  Recon Trust is a subsidiary of Bank of America.  Dkt. 1 ¶ 24.

10      On March 16, 2009, apparently before it was substituted as trustee, Recon Trust

11  recorded a notice of default after Plaintiffs defaulted on their loan payments.[2]  Dkt. 1 ¶25 at

12  29; Dkt. 11, Ex. 3.  On January 13, 2010, after it was substituted as trustee, Recon Trust

13  sold Plaintiffs' property to Defendant Bank of New York Mellon ("Bank of New York") at

14  a non-judicial foreclosure sale.  Dkt. 1 ¶26 at 29.

15      On February 16, 2010, Bank of New York filed an unlawful detainer action against

16  Plaintiffs.  Id. ¶ 29 at 30.  Bank of New York claimed it was acting as trustee, not the

17  holder of the beneficial interest in trust.  Id.  Bank of New York identified the holder of the

18  beneficial interest in trust as "CWALT," a pseudonym of Countrywide.  Id.  Fearful of a

19  money judgment, and, as a result of Defendants' agreement to drop monetary damages

20  related to any eviction, Plaintiffs "fled the premises" as a result of Defendants'

21  "manipulation."  Id. ¶ 35 at 33.

22

23

24      [1] Defendants request this Court to take judicial notice of loan and foreclosure documents on
the ground that the documents are publicly filed land records.  The Court hereby grants
Defendants' request.  MGIC Indemn. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) ("On

25  motion to dismiss, [the court] may take judicial notice of matters of public record outside the
pleadings."); Rosal v. First Fed. Bank of Cal., 671 F.Supp.2d 1111, 1112 (N.D. Cal. 2009) (taking

26  judicial notice of foreclosure and other documents recorded in the county's official records).

27      [2] The Court notes that, according to Plaintiffs' complaint and the documents subject to
judicial notice, Recon Trust recorded the notice of default before it was substituted as trustee.  No

28  party raises this as an issue in the instant motion.

Because courts in general were determining that Defendants' foreclosures around the country did not conform to the law, on October 1, 2010, Recon Trust filed a notice of rescission of the foreclosure sale. Id. ¶ 37 at 33. The rescission notice stated that the foreclosure sale had been conducted in error "due to a failure to communicate timely notice of conditions which would have warranted a cancellation of the foreclosure sale" which occurred on January 13, 2010. Id. ¶ 37 at 33-34. The notice of rescission also stated that Plaintiffs' deed of trust was "in full force and effect," but Defendants never served the notice on Plaintiffs and did not return the property to Plaintiffs. Id. ¶¶ 37-42 at 34.

## B. PROCEDURAL BACKGROUND

On December 22, 2010, Plaintiffs filed a class action complaint against Defendants. Dkt. 1 at 23. Plaintiffs allege that Defendants engaged in the same conduct they directed at Plaintiffs when they "wrongfully foreclosed" on "thousands of other California homes." Id. 1 ¶ 41 at 34. Plaintiffs aver that Defendants' conduct was a "scheme to unlawfully, unfairly, fraudulently and tortiously dispossess persons of their homes." Id. ¶ 36 at 33. Also, Plaintiffs aver that Defendants engaged in misrepresentations regarding the unlawful detainer action for the purposes of dispossessing Plaintiffs of their property. Id. ¶¶ 32-35.

On behalf of themselves and those similarly situated, Plaintiffs assert causes of action for (1) wrongful eviction; (2) civil conspiracy; (3) unfair competition in violation of California Business and Professions Code §§ 17200 et seq. ("UCL"); and (4) unfair competition in violation of the California Unfair Practices Act, California Business and Professions Code §§ 17043 ("UPA"). Id. at 37, 40, 42 and 44.

As a result of Defendants' actions, Plaintiffs allege that they were deprived of the use and enjoyment of their property and have incurred damages arising from the deprivation, while Defendants have acquired "tens of millions of dollars of real property" because of their "unfair, unlawful, fraudulent and tortious" foreclosure "scheme." Id. ¶ 43 at 34-35. Plaintiffs seek $50,000,000 in punitive damages. Id. ¶¶ 67-68 at 39-40.

On January 28, 2011, Defendants removed to this Court. On March 2, 2011, Defendants moved to dismiss Plaintiffs' complaint on the ground that it fails to state a

1   claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

2   Moreover, Defendants argue that Plaintiffs' claims relating to fraud have not been plead

3   with the specificity required under Rule 9(b).  Plaintiffs oppose the dismissal of their

4   wrongful eviction, civil conspiracy and UCL claims.  Dkt. 17.  However, Plaintiffs stipulate

5   to dismissal of the UPA claim.  Dkt. 17 at 11.

6   **II.   LEGAL STANDARDS**

7   **A.   RULE 12(B)(6)**

8        Rule 8 requires that a complaint contain a "short and plain statement of the claim

9   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  If a complaint fails

10  to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim

11  upon which relief can be granted.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

12  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to

13  relief that is plausible on its face."  Id.  "Specific facts are not necessary; the statement need

14  only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it

15  rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).  "[A]

16  plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

17  than labels and conclusions, and a formulaic recitation of the elements of a cause of action

18  will not do."  Twombly, 550 U.S. at 555.

19       On a Rule 12(b)(6) motion, the facts alleged in the pleadings are accepted as true

20  and the Court must "draw inferences in the light most favorable to the plaintiff."  Barker v.

21  Riverside Cnty. Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009).  The Court's inquiry

22  generally is limited to the allegations in the complaint.  Lazy Y Ranch Ltd. v. Behrens, 546

23  F.3d 580, 588 (9th Cir. 2008).  "A court may, however, consider certain materials—

24  documents attached to the complaint, documents incorporated by reference in the

25  complaint, or matters of judicial notice—without converting the motion to dismiss into a

26  motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.

27  2003).  Where a complaint or claim is dismissed, leave to amend generally is granted,

28

1    unless further amendment would be futile.  Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083,

2    1087-88 (9th Cir. 2002).

3         **B.    RULE 9(B)**

4         A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance

5    with Rule 9(b), which provides, in relevant part, that "[i]n alleging fraud or mistake, a party

6    must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ.

7    P. 9(b); Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Fraud claims

8    and claims that "sound in fraud" or are "grounded in fraud" must be pled with particularity.

9    Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  To satisfy this burden,

10   plaintiff must allege "the who, what, when, where, and how" of the alleged fraudulent

11   conduct, Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation

12   as to why [a] statement or omission complained of was false and misleading," In re

13   GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Where multiple

14   defendants are involved, the plaintiff also must identify the role of each defendant in the

15   alleged fraudulent scheme.  See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir.

16   2007).  Allegations of fraud cannot be made in information and belief.  Moore v. Kayport

17   Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).  Failure to comply with Rule 9(b)

18   when alleging fraud is grounds for dismissal.  See Vess, 317 F.3d at 1103.

19   **III.   DISCUSSION**

20        Defendants' motion to dismiss challenges the sufficiency of the complaint in

21   general, and the individual claims specifically.

22        **A.    GENERAL DEFICIENCIES**

23             **1.    Judicial Foreclosure vs. Non-judicial Foreclosure**

24        Defendants argue that Plaintiffs' complaint fails generally because Plaintiffs'

25   complaint improperly attacks the foreclosure sale on the grounds that the sale failed to

26   comply with the requirements of a *judicial* foreclosure, when, in fact, Defendants

27   conducted a *non-judicial* foreclosure.   In particular, Defendants focus on Paragraph 26 of

28   Plaintiffs' complaint, which provides in pertinent part that:

[I]n foreclosing on and selling the Plaintiffs' property to Defendant BANK OF NEW YORK MELLON, Defendant RECONTRUST COMPANY [was legally required to have, but] lacked the following:  (a) proof of default from the note holder; (b) the original promissory note; (c) a legally valid assignment of beneficial rights in the note; (d) a properly executed power of attorney to act on behalf of the beneficiary under the Deed of Trust; and (e) standing to initiate and perfect the sale.

Dkt. 1 ¶ 26 at 29; see also ¶ 18 at 27.  Plaintiffs also allege:

The effect of failure to comply with all legal requirements related to foreclosure as set forth in the preceding paragraph is to render any foreclosure, and any events or actions premised on the foreclosure, void.  Any party who proceeds with a foreclosure without complying with these formalities commits an unlawful, unfair, fraudulent and tortious act.  The unlawful, unfair, fraudulent and tortious nature of such an act is compounded when, in addition to foreclosing on a property without standing to do so, the party undertaking the foreclosure then proceeds to evict the occupants of that property.

Id. ¶ 19 at 27-28.

Defendants' contend that none of the alleged legal requirements in Paragraph 26 applied to their foreclosure sale because it was a non-judicial foreclosure sale.  Dkt. 10 13-16 (citing authority).  Plaintiffs concede this error and state in their opposition that:

Defendants are correct that the rules governing judicial foreclosure do not apply in this case because this case involves a non-judicial foreclosure.  Specifically, the Defendants are correct that proof of default by the note-holder, possession of the original promissory note, possession of a legally valid assignment of  beneficial rights in the note, a properly executed power of attorney to act on behalf of the beneficiary, and standing to initiate and perfect the sale are not bars to a non-judicial foreclosure.

Dkt. 17 at 2-3.  Thus, Plaintiffs acknowledge they erroneously allege that Defendants were required to follow the procedures for a judicial foreclosure.  Hence, Plaintiffs' challenge to the foreclosure is faulty, and their claims should be dismissed.

However, Plaintiffs request leave to amend on the ground that Defendants' non-judicial foreclosure was improper.  Plaintiffs maintain that Defendants failed to provide the proper notice of the conditions that warrant cancellation of the foreclosure sale as required by California Civil Code § 2924c, and therefore their eviction of Plaintiffs proceeded illegally.  Moreover, after rescinding the foreclosure due to defects in the foreclosure process, legal title allegedly was restored to Plaintiffs, but Defendants illegally failed to return the property to Plaintiffs.  The Court now considers whether to grant Plaintiffs leave to amend to state a claim of wrongful non-judicial foreclosure.

## 2. Wrongful Non-Judicial Foreclosure

California Civil Code §§ 2924 through 2924l provide a comprehensive framework for non-judicial foreclosure sales pursuant to a power of sale contained in a deed of trust. Moeller v. Lien, 25 Cal.App.4th 822, 830 (1994).  Strict compliance with the statutory requirements is mandated.  Miller v. Cote, 127 Cal.App.3d 888, 894 (1982).  Under section 2924c, a mortgagor may cure any default on the mortgage within the timeframes provided in that statutory provision.  Munger v. Moore, 11 Cal.App.1, 8 (1970).  As long as the property has not been sold to a bona fide purchaser for value, a foreclosure that is defective under the statutory scheme can be stopped.  Moeller, 25 Cal.App.4th at 830-32.  Once the foreclosure sale to a bona fide purchaser for value has occurred, however, the mortgagor is not able to enjoin the sale, but may institute an action for damages resulting from statutory deficiencies.  Id.; Munger, 11 Cal. App. at 11.  The mortgagee and his principal are liable to the mortgagor for the value of the property at the time of the sale in excess of the mortgages and liens against the property.  Munger, 11 Cal. App. at 11.

According to the allegations in the complaint, and as further explained in their opposition, Plaintiffs have made some attempt to aver a statutorily deficient non-judicial foreclosure sale due to deficient notice of the conditions that could warrant cancellation of that sale. Dkt. 1 ¶ 37 at 33-34; Dkt 17 at 3.  Plaintiffs, therefore, may be able to allege a wrongful non-judicial foreclosure claim in violation of California Civil Code §§ 2924 through 2924l.  Thus, the Court GRANTS Defendants' motion to dismiss with leave to amend to state a wrongful non-judicial foreclosure.

## 3. Tender

In light of the Court's finding that Plaintiffs may amend to allege a wrongful non-judicial foreclosure, the Court considers Defendants' contention that Plaintiffs may not assert any cause of action attacking the foreclosure sale unless Plaintiffs allege tender. "[T]he law is long-established that a trustor or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale." U.S. Cold Storage v. Great W. Sav. & Loan Ass'n, 165 Cal.App.3d 1214, 1222 (1985); accord Karlsen v. American

Savings and Loan Assoc., 15 Cal.App.3d 112, 117-18 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.").  However, it is not clear whether Plaintiffs seek to undo the foreclosure sale and reacquire possession of the property, in which case allegations of tender would be required, or whether Plaintiffs seek only damages, where tender would not be required because the measure of damages would take into account Plaintiffs' obligation to tender. See Munger, 11 Cal.App.3d at 11 (damages are the value of the property at the time of the sale less amounts for mortgages and liens on the property).   To the extent that Plaintiffs seek to undo the foreclosure, then Defendants' argument is valid and causes of action seeking to challenge the foreclosure sale are dismissed for Plaintiffs' failure to allege tender.  Plaintiffs are granted leave to amend to cure the deficiency.

### B.    SPECIFIC DEFICIENCIES:  PLAINTIFFS' CAUSES OF ACTION

The Court now addresses the deficiencies Defendants raise with regard to Plaintiffs' specific causes of action for (1) wrongful eviction, (2) civil conspiracy, and (3) unlawful, unfair and fraudulent business practices in violation of California's UCL.

#### 1.    Wrongful Eviction

As to Plaintiffs' wrongful eviction cause of action, Defendants maintain Plaintiffs' allegations are inadequate because they (1) show Plaintiffs left the property voluntarily, (2) fail to plead malicious prosecution in connection with the unlawful detainer action, (3) do not show a "wrongful" eviction, and (4) do not satisfy the specificity requirements of Rule 9(b) regarding any misrepresentations in the unlawful detainer action.

##### a)    Constructive Eviction

To establish a wrongful eviction, the plaintiff must show that (1) plaintiff was in peaceable possession of the property, and (2) plaintiff was wrongfully dispossessed of the property.  Spinks v. Equity Residential Briarwood Apartments, 171 Cal.App.4th 1004, 1040, 1042 (2009); Cunningham v. Universal Underwriters, 98 Cal.App.4th 1141, 1149-50 (1998).  Wrongful eviction may be shown by constructive eviction.  Groh v. Kover's Bull Pen, Inc., 221 Cal.App.2d 611, 614 (1963).  Defendants assert that Plaintiffs cannot

establish these elements because they voluntarily left the property.  Plaintiffs argue they did not voluntarily leave the property, but that left because they were fearful of a money judgment against them in the unlawful detainer action, which was not a proper action because the foreclosure sale was deficient.

Defendants maintain that Plaintiffs cannot assert constructive eviction because that doctrine only applies in the landlord-tenant relationship.  Defendants are correct that constructive eviction normally arises in the landlord-tenant relationship.  In such a context, constructive eviction occurs when the landlord disturbs the tenant's possession, makes the premises unfit for their intended use or deprives the tenant of the beneficial use of the property.  Groh, 221 Cal.App.2d at 614 (discussing constructive eviction in landlord-tenant relationship).  Under these circumstances, the tenant is free to quit the premises and sue for damages.  Id.

While Defendants' authority discusses the theory of constructive eviction in the context of a landlord-tenant relationship, the authority does not necessarily stand for the proposition that a constructive eviction may occur *only* in a landlord-tenant relationship.  In light of Defendants' lack of authority, the Court is unconvinced that that the doctrine only applies to the landlord-tenant relationship.  See Block v. Frischholz, 587 F.3d 771,  776 (7th Cir. 2009)  (indicating that owners or renters of housing may have a discrimination claims based on constructive eviction after they move into the housing); Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n, 388 F.3d 327, 329 (7th Cir. 2004) ("[a]s a purely semantic matter the statutory language [of the housing discrimination act] might be stretched far enough to reach a case of 'constructive eviction'" of an owner or renter of housing); The Comm. Concerning Cmty Improvement v. City of Modesto, 583 F.3d 690, 712-15 (9th Cir. 2009) (discussing Seventh Circuit cases when permitting post-acquisition housing discrimination claims on behalf of owners and renters).  Thus, the Court rejects Defendants' assertion that Plaintiffs cannot allege wrongful eviction on a theory of constructive eviction.

### b) *Malicious Prosecution*

Defendants argue that, to establish wrongful eviction based on the unlawful detainer action, Plaintiffs must establish the elements of a malicious prosecution claim.  "Where the eviction arises from the wrongful use of judicial process [in an unlawful detainer action] the cause of action is one for malicious prosecution."  Gause v. McClelland, 102 Cal.App.2d 762, 764 (1951); Asell v. Rodrigues, 32 Cal.App.3d 817, 824 n.3 (1973) ("The action for wrongful eviction or, as in the case at bench, for *threatened* wrongful eviction is in reality an action for malicious prosecution, an essential element of which is want of probable cause.").  To state a claim for malicious prosecution, the complaint must allege (1) malice, (2) lack of probable cause, and (3) a favorable termination of the prior proceedings. Scannell v. County of Riverside, 152 Cal.App.3d 596, 611 (1984).  While Plaintiffs' complaint contains allegations that could support the element of malice, Dkt. 1 ¶¶ 16-39 at 27-40, the complaint is devoid of any allegations that the unlawful detainer action lacked probable cause or resulted in a termination favorable to them.  Plaintiffs do not address these deficiencies in their opposition.  Thus, to the extent Plaintiff is attempting to predicate their wrongful eviction claim on the unlawful detainer action, Plaintiff must allege facts consistent with requirements for malicious prosecution.

### c) *"Wrongful" Eviction*

Defendants argue that Plaintiffs' allegations that the eviction was wrongful fail because Plaintiffs base those allegations on the failure to comply with requirements that apply to judicial foreclosure sales, not non-judicial foreclosure sales.  Plaintiffs concede that Defendants' argument is correct and simply request leave to amend based on Defendants' errors with regard to a non-judicial foreclosure.  Dkt. 17 at 9.  For the reasons discussed in connection with permitting Plaintiffs leave to amend to allege a wrongful non-judicial foreclosure claim under California Civil Code sections 2924 through 2924l, the Court will provide Plaintiffs with an opportunity to amend to allege that Defendants' eviction was "wrongful."

1

### d)   Specificity

With regard to Defendants' arguments pertaining to specificity under Rule 9(b),

Plaintiffs state "Plaintiffs are prepared to expressly include [particular facts plead elsewhere

in the complaint] in their Wrongful Eviction Cause of Action, complete with a detailed

statement as to which of the Defendants (and/or agents) was immediately responsible for

the misrepresentation at issue." Dkt. 17 at 8.  Plaintiffs, therefore, request leave to amend

to satisfy the specificity aspect of the claim, which the Court will allow.

### e)   Summary

Plaintiffs' wrongful eviction claim is deficient for (1) failing to allege malicious

prosecution to the extent that Plaintiffs premise it on the unlawful detainer action, (2)

erroneously making allegations that the eviction was "wrongful" based on a *judicial*

foreclosure, and (2) failing to describe misrepresentations with the requisite specificity.

Hence, the Court GRANTS Defendants' motion to dismiss Plaintiffs' wrongful eviction

claim with leave to amend to cure these deficiencies.

### 2.   Civil Conspiracy

In Plaintiffs' third cause of action, Plaintiffs allege that Defendants formed "a

common purpose to acquire title and possession to the real properties belonging to

Plaintiffs and members of Plaintiffs' class." Dkt. 1 ¶ 71 at 40.  Plaintiffs then rely on many

of their allegations concerning an erroneous judicial foreclosure, as opposed to a wrongful

non-judicial foreclosure, in averring a civil conspiracy among the Defendants.

As Defendants correctly point out, "[c]ivil conspiracy is not an independent tort."

Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 823 (2005).

Rather, it is a "legal doctrine that imposes liability on persons who, although not actually

committing a tort themselves, share with the immediate tortfeasors a common plan or

design in its perpetration."  Id.  The essence of the claim is that "it is merely a mechanism

for imposing vicarious liability; it is not itself a substantive basis for liability."  Id.

Following this, a civil conspiracy "does not per se give rise to a cause of action unless a

civil wrong has been committed resulting in damage."  Doctors' Co. v. Superior Court, 49

Cal. 3d 39, 44 (1989).  In other words, a civil conspiracy claim cannot be alleged as a tort separate from the underlying wrong it is organized to achieve.

As set forth above, Plaintiffs have failed to allege a viable claim for wrongful eviction, and as such, there is no cognizable claim on which to predicate Plaintiffs' claim for civil conspiracy.  Hence, the Court GRANTS Defendants' motions to dismiss the civil conspiracy claim with leave to amend an independently actionable violation of law such as a wrongful non-judicial foreclosure or wrongful eviction.[3]

### 3.    UCL

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). The heightened pleading requirements of Rule 9(b) are applicable to UCL claims.  Kearns, 567 F.3d at 1125 (9th Cir. 2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL.").

### a)    Unlawful Practice

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."  Farmers Ins. Exch. v. Super. Court, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  The violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39 (1994).  Where a plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a UCL claim either.  See Ingels v. Westwood One Broad. Servs., Inc., 129 Cal.App.4th 1050, 1060

---

[3] In amending, Plaintiffs should be mindful of the elements of a civil conspiracy claim. Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 511 (1994) (elements); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (stating required to plead civil conspiracy with specificity).

(2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.") (internal quotation marks omitted).

Defendants attack the validity of Plaintiffs' claims under the unlawful prong, again on the ground that Plaintiffs improperly alleges wrongful eviction based on a judicial foreclosure.  Plaintiffs again concede the point, Dkt. 17 at 9-10, and requests leave to amend to base her allegations under this prong on a wrongful non-judicial foreclosure.  The Court GRANTS Defendants' motion to dismiss the unlawful business practice claim with leave to amend for the reasons stated in the discussion above about Plaintiffs' potential claim for wrongful non-judicial foreclosure.

### b)   *Unfair Practice*

An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001).  Alternatively, an act is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided."  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1555 (2006).  In Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999), the California Supreme Court cautioned against an overly broad interpretation of "unfair" under the UCL, noting that "[v]ague references to 'public policy,' for example, provide little real guidance."  Id. at 185.  Thus, "where a claim of an unfair act or practice is predicated on public policy, … Cel-Tech … require[s] that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."  Gregory v. Albertson's, Inc., 104 Cal.App.4th 845, 854 (2002).

Plaintiffs allege the following to establish a violation of public policy:  "[T]he . . . unfair . . . scheme engaged in by Defendants . . . represents an assault against California's important policy favoring home ownership—an interest that transcends business, but which is furthered by it."  Dkt. 1 ¶94 at 45.  Plaintiffs' public policy allegations are inadequate to

establish an unfair business practice.  Plaintiffs' allegations do not state an articulated public policy found in a statute or expressed by an affirmative or specific government enactment.  Cel-Tech Commc'ns, Inc., 20 Cal.4th at 180.  Because Plaintiffs' public policy allegations are too vague to satisfy the requirements of UCL, the Court GRANTS Defendants' motion to dismiss the unfair business practice claim with leave to amend so that, as requested by Plaintiffs, Plaintiffs may provide greater detail about its asserted unfair business practice prong.

### c)   Fraudulent Practice

"The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud."  In re Tobacco II Cases, 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009).  Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive."  Morgan v. AT & T Wireless Servs., Inc., 177 Cal.App.4th 1235, 1254 (2009).   Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose. Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1557 (2007).  "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."  Id.   Plaintiffs must also allege reliance.  In re Tobacco II Cases, 46 Cal.4th at 328; Cattie v. Wal-Mart Stores, Inc., 504 F.Supp.2d 939, 947-49 (S.D. Cal. 2007).  Though "fraudulent" has a different meaning under the UCL than in the case of common law fraud, a complaint alleging "fraudulent conduct" still must meet the particularity requirements of Rule 9(b).  See Kearns, 567 F.3d at 1125.

Defendants contend that Plaintiffs have failed to plead this prong with the requisite specificity.  Plaintiffs state they will remedy this failure by setting "forth which particular statements constituted the fraud, which Defendant or Defendants (and/or agent) uttered the statements, when exactly the statements were uttered, and just how the statements were relied upon."  Dkt.  17 at 10.  In light of Plaintiffs' concession, the Court GRANTS Defendants' motion regarding the UCL's fraudulent prong with leave to amend.

//

**IV.    CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.      Except with regard to Plaintiffs' UPA claim, Defendants' Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.   Plaintiffs are GRANTED LEAVE TO AMEND in a manner consistent with this Order.  As to Plaintiffs' UPA claim, said claim is dismissed with prejudice pursuant to Plaintiff's request.

2.      Plaintiffs shall have fourteen (14) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings.  *Plaintiffs are advised that any additional factual allegations set forth in their amended complaint must be made in good faith and consistent with Rule 11*.

3.      Defendants shall file their responsive pleading to the FAC within fourteen (14) days of the date of service of Plaintiffs' FAC.

4.      This Order terminates Docket 10.

IT IS SO ORDERED.

Dated:  June 30, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge